L38sDZHa

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          21 CR 58 (MKV)
                                            Telephone Conference
 5   ILONA DZHAMGAROVA, et al.,

 6              Defendants.

 7   ------------------------------x

 8                                          New York, N.Y.
                                            March 8, 2021
 9                                          2:00 p.m.

10
     Before:
11
                         HON. MARY KAY VYSKOCIL,
12
                                            District Judge
13

14                            APPEARANCES

15   AUDREY STRAUSS
          United States Attorney for the
16        Southern District of New York
     DAVID R. FELTON
17   JONATHAN E. REBOLD
          Assistant United States Attorney
18
     ARTHUR L. AIDALA
19        Attorney for Defendant Dzhamgarova

20   MICHAEL FINEMAN
          Attorney for Defendant Reznik
21
     LANCE LAZZARO
22        Attorney for Defendant Arcadian

23

24

25
```

L38sDZHa

1          (The Court and all parties appearing telephonically)

2          THE COURT:  Good afternoon.  This is Judge Vyskocil.

3          We're here in the matter of 21 CR 58, USA v.

4     Dzhamgarova, et al.  I am Judge Vyskocil, and I will be

5     presiding over this case.

6          Before we go any further, I want to ask each

7     defendant, do you understand English clearly or do you require

8     the services of an interpreter?

9          Ms. Dzhamgarova.

10          DEFENDANT DZHAMGAROVA:  Yes, your Honor.  I do

11     understand.

12          THE COURT:  Do you require the services of an

13     interpreter?

14          DEFENDANT DZHAMGAROVA:  No, your Honor, I don't.

15          THE COURT:  All right.  Mr. Reznik?

16          DEFENDANT REZNIK:  Yes, your Honor.  I understand

17     English, and I don't require services of an interpreter, your

18     Honor.

19          THE COURT:  All right.  Mr. Arcadian.

20          DEFENDANT ARCADIAN:  Yes, your Honor.

21          THE COURT:  Yes.  You understand English?

22          DEFENDANT ARCADIAN:  Yes, I do.

23          THE COURT:  Do you require the services of an

24     interpreter to understand today's proceedings?

25          DEFENDANT ARCADIAN:  Yes.  I understand today's

L38sDZHa

1    proceeding.  I don't require the services of an interpreter.

2              THE COURT:  You do not?

3              DEFENDANT ARCADIAN:  I do not.

4              THE COURT:  OK.  Thank you.

5              DEFENDANT ARCADIAN:  Thank you.

6              THE COURT:  All right.  Ms. Dempsey, are you able to

7    call the appearances, or did you want me to do that?

8              THE DEPUTY CLERK:  Your Honor, I'm completely frozen.

9              THE COURT:  All right.  No problem.

10             Can I please ask for appearances for the record,

11   starting with the government.

12             MR. REBOLD:  Yes, your Honor.  Jonathan Rebold for the

13   government.  I'm joined on this conference call with my

14   colleague, AUSA David Felton, and I believe that Special Agent

15   Russell Lantier with the Federal Bureau of Investigation either

16   has dialed in or is planning on dialing into this call.

17             AGENT LANTIER:  That's correct.  This is Special Agent

18   Russell Lantier.  I am here.

19             THE COURT:  Good afternoon.  Thank you all.

20             Mr. Felton is having a problem with the video?

21             MR. FELTON:  No, your Honor.  I'm here.  I don't know

22   if you can see or hear me.  I'm here as well.

23             THE COURT:  Now I can, yes.  Thank you.

24             All right.  Counsel for Ms. Dzhamgarova.

25             MR. AIDALA:  Yes.  Arthur Aidala, A-i-d-a-l-a.

L38sDZHa

1              Good afternoon, your Honor.

2              THE COURT:  Good afternoon.  Counsel for Mr. Reznik?

3              MR. FINEMAN:  Good afternoon, your Honor.  Michael

4    Fineman on behalf of Mr. Reznik.

5              Mr. Reznik is present on the call as well, as you

6    know.

7              THE COURT:  Yes.  Thank you.

8              Counsel for Mr. Arcadian.

9              MR. LAZZARO:  Lance Lazzaro for Mr. Arcadian.

10             Good afternoon, your Honor.

11             THE COURT:  Good afternoon.

12             Mr. Lazzaro, do you have a video?

13             There you are.  Everybody keeps moving around.

14   All right.  Thank you.

15             All right.  We do, of course, have a court reporter

16   with us today, Ms. Frankó.

17             Are you able to hear us all clearly?

18             THE REPORTER:  That's correct, your Honor.

19             THE COURT:  All right.  Thank you very much.

20             I have asked each of the defendants, I hope that was

21   on the record, whether they needed of the services of an

22   interpreter.  They each clearly do not require the services of

23   an interpreter.

24             We do have an interpreter on standby on this call, so

25   should we get to a point where anybody feels that they would

L38sDZHa

1    prefer to have something interpreted, let the court know, and

2    we can ask the interpreter to assist us.

3          All right?  Before we go any further, needless to say,

4    we are proceeding today remotely by video conference.  We're

5    doing that because we remain in the midst of the COVID-19

6    pandemic, and I am conducting this proceeding by video

7    conference pursuant to the authority provided by Section 15002

8    of the CARES Act and standing orders issued by our Chief Judge,

9    Colleen McMahon, pursuant to that Act.

10          Having said that, today's proceeding is open to the

11   press and to the public, as if we were in open court.  We

12   posted the dial-in information for today's proceeding on ECF.

13   I would ask that anyone who is not speaking, please mute your

14   line so that we can cut down on feedback and interference, and

15   the court reporter can hear and I can hear, we all can hear

16   each other more clearly.

17          I would also ask that when you do address the court,

18   please identify yourself for the record so that we get a clear

19   transcript of what happens today.

20          Now, as I hope each of the defendants knows and

21   understands, pursuant to Rule 43 of the Federal Rules of

22   Criminal Procedure, you have a right to appear in open court

23   before me to be arraigned on the charges before you.  Counsel

24   and all defendants are appearing before me today by video

25   conference.

L38sDZHa

1        I have received from each of the defendants -- or from

2    their counsel, I should say -- two documents; a waiver of a

3    right to be present at a criminal proceeding, specifically a

4    waiver of a right to be present at today's arraignment, and a

5    consent for me to conduct today's proceedings by video

6    conference.

7        I would like to address first counsel for each of the

8    defendants, and after your counsel speaks, I'm going to ask

9    each of the defendants a few questions.  So please listen very

10   carefully to my colloquy with counsel so that I don't have to

11   repeat the questions when I turn to each of the defendants.

12       So I'll go in the order in which people are named on

13   the caption.  So starting with Ms. Dzhamgarova, would counsel

14   please explain to me first when you were first appointed and

15   how you have consulted with the defendant, including whether

16   you used the services of an interpreter for those

17   communications.  I would then like to know how the two

18   documents, the waiver and the consent to proceed remotely, were

19   provided to your client, did you explain to your client his or

20   her right to appear before me in open court, did you sign this

21   document, did your client sign the document, and was it your

22   sense that your client understood his or her right to be

23   present in open court and voluntarily gave up those rights and

24   is consenting freely and voluntarily to proceeding remotely by

25   video conference.

L38sDZHa

1          All right.  So I will start with you, Mr. Aidala and

2     Ms. Dzhamgarova.

3          MR. AIDALA:  I wasn't appointed.  I was retained

4     approximately two weeks ago.

5          I've met with my client.  We have had a face-to-face

6     meeting on top of several phone calls.  As the court knows,

7     this past Thursday, there was a presentment before the

8     magistrate, at which time my client was also physically in my

9     office.  At that time, we had a signed waiver to appear in

10     person.  As the court may not know, my client is an attorney.

11          THE COURT:  Yes.

12          MR. AIDALA:  She is aware of her rights to appear

13     personally.  We did go over them.  She does obviously

14     understand why we are all not appearing in person and waived

15     those rights for Thursday's presentment, and then waived again

16     this Friday and over the weekend about appearing remotely.  In

17     fact, your Honor, it was her desire with my office for a remote

18     location.  She is with me today.

19          THE COURT:  You keep cutting in and out every time you

20     turn your head.

21          MR. AIDALA:  Your Honor, to summarize it, I've met

22     with my client personally.  We have gone over the waiver.  We

23     have gone over her rights to appear in person and she has

24     waived those rights to appear in person.  She did so on

25     Thursday for the presentment, and then she has done so again

L38sDZHa

1    today.

2            THE COURT:  All right.  Ms. Dzhamgarova, have you

3    heard your counsel's answers to my questions?

4            DEFENDANT DZHAMGAROVA:  Yes, your Honor.

5            THE COURT:  And did you concur in his statement to me?

6            DEFENDANT DZHAMGAROVA:  Yes, your Honor.

7            THE COURT:  Anything that you wish to add or correct?

8            DEFENDANT DZHAMGAROVA:  No, your Honor.

9            THE COURT:  All right.  You do understand that you

10   have the right to be present before me in court today?

11           DEFENDANT DZHAMGAROVA:  Yes, your Honor, I do.

12           THE COURT:  And you are knowingly and voluntarily

13   agreeing to proceed instead today by video conference rather

14   than be present in open court?

15           DEFENDANT DZHAMGAROVA:  Yes, your Honor.

16           THE COURT:  All right.  I have, as I say, two

17   documents with respect to Ms. Dzhamgarova.  The first is the

18   waiver of right to be present at a criminal proceeding.  The

19   document is not dated.

20           Counsel, I need, while you're together, counsel, can

21   we ship the camera back.  Do you have a copy of this document?

22           MR. AIDALA:  Yes, your Honor.

23           THE COURT:  Can you please date the waiver of right to

24   be present at criminal proceedings?

25           MR. AIDALA:  Yes, your Honor.

L38sDZHa

1      THE COURT:  And then right above, there are three

2   requirements, frankly, that I'm supposed to satisfy under

3   Rule 10 that the defendant has received and reviewed a copy of

4   the indictment, that the defendant does not need me to read the

5   indictment aloud, and that the defendant pleads not guilty.

6   You're supposed to put checkmarks after those if they are

7   applicable.

8      MR. AIDALA:  Yes, your Honor.

9      THE COURT:  So if you could please do that and send me

10   the further document, and then we have the separate document, a

11   consent to proceed by video.  You did not check arraignment,

12   which is what we're together for today.

13      MR. AIDALA:  OK, your Honor.

14      Judge, I got out of a medical procedure, and I did not

15   want to adjourn this for the court's sake.  So although I

16   reviewed all of these documents on Thursday and over the

17   weekend, I did not see the final draft that was submitted to

18   the court today.

19      I apologize, your Honor.

20      THE COURT:  All right.  The consent to proceed by

21   video also needs to be dated.  All right.

22      Let me speak again --

23      While I'm with you, Mr. Aidala, is that your signature

24   that appears on this document?

25      I'm sorry.  Your signature is on the consent to

L38sDZHa

1    proceed by video conference?

2              MR. AIDALA:  Yes, your Honor.

3              THE COURT:  And you did not communicate using an

4    interpreter, correct?

5              MR. AIDALA:  That is correct.

6              THE COURT:  All right.  I see Ms. Dzhamgarova again

7    please.

8              First of all, am I saying your name correctly?

9              DEFENDANT DZHAMGAROVA:  Yes, your Honor.

10             THE COURT:  All right.  Mine isn't the easiest either.

11   I'm particularly sensitive to that.

12             DEFENDANT DZHAMGAROVA:  Thank you.

13             THE COURT:  Is this your signature that appears on the

14   waiver of right to be present at a criminal proceeding?

15             DEFENDANT DZHAMGAROVA:  Yes, your Honor.

16             THE COURT:  And did you, in fact, sign as well the

17   consent to proceed by video conference?

18             DEFENDANT DZHAMGAROVA:  Yes, your Honor.

19             THE COURT:  All right.  And that includes at today's

20   arraignment, even though you didn't check that box, you're

21   revising that with your counsel and get me a revised form?

22             DEFENDANT DZHAMGAROVA:  Yes, your Honor.

23             THE COURT:  All right.  Thank you.

24             All right.  Mr. Fineman, I have similar two documents

25   that appear to be signed by Mr. Reznik.

L38sDZHa

1          Do you have a copy of the documents, sir?

2          DEFENDANT REZNIK:  I do, your Honor.  I provided them

3     to the court.

4          THE COURT:  All right.  So can you please explain to

5     me, when you were retained or appointed and the circumstances

6     under which you met with your client, and then would you please

7     explain to me how these forms were provided to Mr. Reznik,

8     whether you explained to him his right to be present in open

9     court, and whether, based on that conversation, you formed the

10    opinion that he knows and understands his rights and is

11    voluntarily waiving them.

12         MR. FINEMAN:  Your Honor, I was retained in this

13    matter last week.  Formally retained on Thursday, but the

14    client and I had met previously to that.

15         We have discussed this case as well as this procedure.

16    This is the second time we are appearing remotely in this case.

17    We appeared remotely via telephone on Friday for the initial

18    presentment where my client filled out similar forms.  The way

19    and the manner in which my client received these forms for

20    today's appearance was that I was provided them by e-mail by

21    the court.

22         I forwarded them by e-mail to my client.  We've

23    discussed them over the phone.  I explained to him his right to

24    be present in court and the reasons that we're not physically

25    present today, because of the ongoing pandemic and health

L38sDZHa

1    crisis.  He understands that while he does have a right to

2    appear in court, that waiving that right is in his interest

3    today so that we can proceed with the arraignment today before

4    your Honor.  He reviewed the paperwork, and I believe he'll be

5    able to speak for himself and said that he signed it after

6    reviewing it and speaking to me about it.

7            And is that your signature, Mr. Fineman, on the second

8    page of the waiver of right to be present at criminal

9    proceedings?

10           MR. FINEMAN:  It is, your Honor.

11           THE COURT:  All right.  Is that your signature on the

12   consent to proceed by video?

13           MR. FINEMAN:  It is, your Honor.

14           THE COURT:  All right.  As with the prior conversation

15   that I had, your client has not checked that he received and

16   reviewed a copy of the indictment, that he does not need me to

17   read the indictment aloud, and that he pleads not guilty to the

18   charges.

19           So if that is, in fact, the case, I would like you

20   please to revise this form, to date it, there is no date on it,

21   as well as check if it is the case that he is waiving his right

22   to be present and conferences on the back page and date that,

23   and with regard to the consent to proceed by video, you haven't

24   checked status or scheduling conference, which we are going to

25   do after we do the arraignment today.

L38sDZHa

1          So I need all of those revised, please, and returned

2     to us.  But do you?

3          MR. FINEMAN:  Yes, your Honor.

4          THE COURT:  In fact, are each of those applicable and

5     do you, in fact, consent to each of those?

6          MR. FINEMAN:  Your Honor, we actually discussed all of

7     those, the client and I.  We discussed receiving the

8     indictment.  We have gone over the indictment, we have also

9     discussed his right to have the indictment read in court, as

10    well as his waiver of that reading of the indictment.

11          We didn't check in those dates because we believed the

12    signature on the bottom would be encompassing of the entire

13    paragraph above, but we can modify that as necessary.

14          THE COURT:  And add a date, please.

15          MR. FINEMAN:  Yes, your Honor.

16          THE COURT:  All right.  May I speak to Mr. Reznik,

17    please.

18          Mr. Reznik, are you on the line still?

19          DEFENDANT REZNIK:  Yes, your Honor.  I'm here.

20          THE COURT:  All right.  Is your camera turned on?

21          DEFENDANT REZNIK:  Yes.

22          THE COURT:  There you are.  All right, sir.

23          Have you heard my conversation with your counsel?

24          DEFENDANT REZNIK:  Yes, your Honor.

25          THE COURT:  Do you disagree with anything that he said

L38sDZHa

1      to me?

2                  DEFENDANT REZNIK:  No, your Honor.

3                  THE COURT:  Is there anything you wish to add?

4                  DEFENDANT REZNIK:  No, your Honor.

5                  THE COURT:  Did you, in fact, sign this document

6      labeled waiver of right to be present at criminal proceedings,

7      specifically at your arraignment today?

8                  DEFENDANT REZNIK:  Yes, your Honor.

9                  THE COURT:  Do you waive your right to be present at

10     conferences in this matter, specifically the conference we're

11     going to hold today?

12                 DEFENDANT REZNIK:  Yes, your Honor.

13                 THE COURT:  And do you agree to proceed by video

14     conference at today's arraignment and at the conference we're

15     going to hold after arraignment?

16                 DEFENDANT REZNIK:  Yes, your Honor.

17                 THE COURT:  All right.  Is that your signature on the

18     first page of the waiver of the right to be present at criminal

19     proceedings?

20                 DEFENDANT REZNIK:  Yes, your Honor.

21                 THE COURT:  And is that your signature on the consent

22     to proceed by video?

23                 DEFENDANT REZNIK:  Yes, your Honor.

24                 THE COURT:  Do you, in fact, knowingly -- do you

25     understand your rights and do you knowingly waive them?

L38sDZHa

| | |
|---|---|
| 1 | DEFENDANT REZNIK:  Yes, your Honor. |
| 2 | THE COURT:  All right.  Thank you. |
| 3 | All right.  Counsel for Mr. Arcadian, that is |
| 4 | Mr. Lazzaro, right? |
| 5 | MR. LAZZARO:  Yes, your Honor. |
| 6 | THE COURT:  All right.  Sir, you've heard the |
| 7 | questions that I have put to your colleagues.  Could you please |
| 8 | explain to me how and when you were retained or appointed, how |
| 9 | you've met with your client, and how you executed with your |
| 10 | client these two forms, the waiver of right to be present and |
| 11 | the consent to proceed remotely? |
| 12 | MR. LAZZARO:  I got retained around two weeks ago with |
| 13 | Mr. Arcadian.  He has been in my office numerous times.  I last |
| 14 | met with him on Friday of this past week, went over the forms |
| 15 | with him.  He understands the nature of waiving his right to be |
| 16 | present in court.  He agrees to be seen remotely, and I ended |
| 17 | up basically executing those forms on his behalf.  I actually |
| 18 | revised it around an hour ago, Judge, and sent to you and dated |
| 19 | it and actually checked each box. |
| 20 | THE COURT:  All right. |
| 21 | MR. LAZZARO:  I think I'm good at this stage. |
| 22 | And he understands his rights that he is giving up, |
| 23 | and he understands the nature that we're still in a pandemic |
| 24 | and agrees to be seen remotely.  He's actually in Arthur |
| 25 | Aidala's office. |

L38sDZHa

1          THE COURT:  I was going to ask you that.  That is your

2     client in Mr. Aidala's office?

3          MR. LAZZARO:  He is, Judge.  They are married.  They

4     were going to appear together today in Mr. Aidala's office, and

5     I have no issue with that.

6          THE COURT:  The two defendants are married?

7          MR. LAZZARO:  Yes.

8          THE COURT:  All right.  And you did not use the

9     services of an interpreter in any of these?

10         MR. LAZZARO:  No, Judge.  He speaks fluent English.

11         THE COURT:  All right.  Mr. Arcadian?

12         DEFENDANT ARCADIAN:  Yes, your Honor.

13         THE COURT:  That's Mr. Aidala's name underneath you,

14    that's why.

15         OK.  Did you, sir, hear my colloquy with your counsel?

16         DEFENDANT ARCADIAN:  Yes, your Honor.

17         THE COURT:  Do you agree with everything he

18    represented to the court?

19         DEFENDANT ARCADIAN:  Yes, your Honor.

20         THE COURT:  Is there anything that you wish to add?

21         DEFENDANT ARCADIAN:  No.

22         THE COURT:  Do you, in fact, understand that you have

23    a right to appear before me in open court for your arraignment

24    in this matter?

25         DEFENDANT ARCADIAN:  Yes.  I understand my right and I

L38sDZHa

1    waive it in light of the pandemic.

2              THE COURT:  And you signed this waiver of the right to

3    be present at a criminal proceeding, specifically your

4    arraignment?

5              DEFENDANT ARCADIAN:  Yes, your Honor.

6              THE COURT:  All right.  And you do have a copy of the

7    indictment and you have had a chance to review it with your

8    lawyer, and you voluntarily waive your right?

9              DEFENDANT ARCADIAN:  Yes, your Honor.

10             THE COURT:  All right.  Do you consent to our

11   proceeding today by video conference?

12             DEFENDANT ARCADIAN:  Yes, your Honor.

13             THE COURT:  All right.  I do find, based on my

14   colloquy with counsel and with the defendants, that each of the

15   defendants knows and understands his or her right to be present

16   before me in open court for today's arraignment and that each

17   of the defendants has knowingly and voluntarily waived those

18   rights and has voluntarily consented to our proceeding today by

19   video conference.

20             In light of all of those answers, I find pursuant to

21   Rule 10(b) of the Federal Rules of Criminal Procedure, a

22   knowing and voluntary waiver of defendants' right to have the

23   arraignment proceed today in open court.

24             All right.  Why we were assembled today, as you know,

25   we are here for the arraignment of each of the defendants on

L38sDZHa

```
 1    the indictment in this matter.  I will call on each defendant
 2    by name.  I will then ask each of you the following four
 3    questions:
 4              Have you seen a copy of the indictment containing the
 5    charges against you?
 6              Have you discussed it with your lawyer?
 7              Do you waive public reading, or do you need me to read
 8    the indictment aloud on the record?
 9              And how do you plead to the charges against you?
10              All right.  So let's begin with Ms. Dzhamgarova.  Have
11    you seen a copy of the indictment, ma'am?
12              DEFENDANT DZHAMGAROVA:  Yes, your Honor.
13              THE COURT:  All right.  Have you discussed the
14    indictment with your lawyer?
15              DEFENDANT DZHAMGAROVA:  Yes, your Honor.
16              THE COURT:  Have you had ample opportunity to ask any
17    questions or have any communications that you need with your
18    lawyer in order to be prepared to proceed today?
19              DEFENDANT DZHAMGAROVA:  Yes, your Honor.
20              THE COURT:  All right.  Do you need me to read the
21    indictment aloud, or do you waive public reading?
22              DEFENDANT DZHAMGAROVA:  I waive public reading.
23              THE COURT:  All right.  And how do you plead to the
24    charges against you?
25              DEFENDANT DZHAMGAROVA:  Not guilty.
```

L38sDZHa

1          THE COURT:  All right.  Thank you, ma'am.

2          DEFENDANT DZHAMGAROVA:  Thank you.

3          THE COURT:  Mr. Reznik, have you seen a copy of the

4     indictment?

5          DEFENDANT REZNIK:  Yes, your Honor.

6          THE COURT:  And have you had an opportunity to discuss

7     it with your lawyer?

8          DEFENDANT REZNIK:  Yes, your Honor.

9          THE COURT:  You have, in fact, discussed the charges

10    against you with counsel?

11         DEFENDANT REZNIK:  Yes.

12         THE COURT:  And have you had an ample opportunity to

13    consult in order to be prepared to proceed with today's

14    arraignment?

15         DEFENDANT REZNIK:  Yes, your Honor.

16         THE COURT:  Do you need me to read the indictment

17    aloud to you, or do you waive public reading?

18         DEFENDANT REZNIK:  I waive public reading, your Honor.

19         THE COURT:  And how do you plead to the charges

20    against you?

21         DEFENDANT REZNIK:  Not guilty, your Honor.

22         THE COURT:  All right.  Thank you.

23         Mr. Arcadian.

24         DEFENDANT ARCADIAN:  Yes, your Honor.

25         THE COURT:  Sir, have you seen a copy of the

L38sDZHa

1    indictment and do you have a copy of the indictment containing

2    the charges against you?

3            DEFENDANT ARCADIAN:  Yes, your Honor.

4            THE COURT:  You have had an opportunity to discuss the

5    indictment and the charges with your lawyer?

6            DEFENDANT ARCADIAN:  Yes, your Honor.

7            THE COURT:  Have you had ample opportunity to consult,

8    in order that you understand the proceedings and the charges,

9    and are prepared to proceed with today's arraignment?

10           DEFENDANT ARCADIAN:  Yes, your Honor.

11           THE COURT:  And do you need me to read the indictment

12   aloud, or do you waive public reading?

13           DEFENDANT ARCADIAN:  I waive public reading.

14           THE COURT:  And how do you plead to the charges

15   against you?

16           DEFENDANT ARCADIAN:  Not guilty, your Honor.

17           THE COURT:  All right.  Thank you.

18           A plea of not guilty will be entered on behalf of each

19   of the defendants to the charges against them.

20           All right.  Let's move to the status conference

21   portion of today's proceeding.  I don't know who will be

22   speaking on behalf of the government.

23           Is that you, Mr. Felton or Mr. Rebold?

24           MR. REBOLD:  It will be me, Mr. Rebold, your Honor.

25           THE COURT:  All right.  I'm not seeing you again now.

L38sDZHa

1          Is your camera turned on, sir?

2          MR. REBOLD:  It is.  I'm seeing myself, but I don't

3    know if that is really dispositive.

4          THE COURT:  You're coming back into view.  There you

5    go.

6          OK.  So can I please hear from you then about,

7    briefly, the nature of the case?

8          MR. REBOLD:  Yes, your Honor.  As laid out in, I'm

9    sure, greater detail in the indictment, this case involves a

10   conspiracy to commit immigration fraud.  The investigation

11   started with a focus on Ms. Dzhamgarova, who has a law firm in

12   Brooklyn, and who offers immigration services to mostly

13   individuals from Russia and the other commonwealth of

14   independent states who are seeking some form of legal status in

15   this country.

16          Among other things, that investigation revealed that

17   Ms. Dzhamgarova frequently encouraged and/or aided her clients

18   to seek asylum under fraudulent pretenses, including by, among

19   other things, helping them make claims that they were gay males

20   or lesbian females who had been persecuted in their native

21   countries and for whom it would be unsafe to return to those

22   countries, when she fully understood that these clients were

23   heterosexual males and females who had suffered no such

24   persecution.

25          As part of the investigation, Ms. Dzhamgarova would

L38sDZHa

1    tell clients to obtain certain documents, such as membership

2    cards at particular LGBTQ center, to help weave up their

3    application, to help prove their sexual orientation, and she

4    worked with what she referred to as writers or journalists who

5    would help her clients write an asylum affidavit, which is an

6    optional statement of one's personal history, past persecution,

7    and/or proposed basis for asylum that is frequently appended to

8    a person's I-589 asylum application.

9           This case, among other things, involved the use of a

10   cooperating witness, who Ms. Dzhamgarova referred to defendant

11   Igor Reznik, who served as a journalist for that particular

12   applicant's fraudulent asylum application.

13          Mr. Reznik, during the course of a number of meetings

14   and phone calls, but including an initial pair of phone calls

15   that lasted about five hours with the cooperating witness on

16   his own, and understanding that the cooperating witness was a

17   heterosexual male, completely fabricated and concocted a very

18   lengthy and detailed story of historical persecution on behalf

19   of the cooperating witness.  He did so with very little

20   assistance or prompting from the cooperating witness.

21          And that document, which was revised over time but

22   turned out to be about nine pages of single-spaced proposal,

23   laid out in great detail a story of persecution that Mr. Reznik

24   fabricated himself, wrote himself, and that he understood never

25   actually occurred.

L38sDZHa

1          When that cooperating witness had to go for his asylum

2    interview with an asylum office with USCIS, which is United

3    States Citizenship and Immigration Services, Ms. Dzhamgarova

4    was unavailable.  So she referred her husband, who is

5    Mr. Arcadian, also an immigration attorney, to represent the

6    cooperating witness.

7          Mr. Arcadian also was made fully aware that the

8    application for that cooperating witness was based entirely on

9    fraud and, nevertheless, helped assist that witness to prepare

10   for his asylum interview, coached him how to answer certain

11   questions, and provided the asylum affidavit, which he knew was

12   false, provided other documentation, which he knew was

13   fraudulent or obtained based on fraudulent pretenses and

14   accompanied that witness into his asylum interview, which was

15   held under oath with an asylum officer, in which the

16   cooperating witness repeated many of the same lies that he had

17   discussed with the three defendants.

18         Our investigation is ongoing, but to be clear, it is

19   revealed that these services that were extended to the

20   cooperating witness have been extended to multiple other

21   clients of this firm over a period of years, and I expect that

22   there will be eventually a superseding indictment that expands

23   the period of time of the conspiracy.

24         I can certainly provide greater detail that is

25   helpful, your Honor, but I think that's about the 30,000 foot

L38sDZHa

1    overview.

2              THE COURT:  That's sufficient.

3              Does the indictment remain under seal?

4              MR. REBOLD:  I'm not sure why it's listed as such, but

5    on the date of the defendant's arrest on February 18, we saw

6    it, and I believe it was Judge Katharine Parker, Magistrate

7    Judge, who signed our request for unsealing of the indictment.

8    And it should be unsealed, and I can forward that signed

9    document by Judge Parker to the court if it would be helpful in

10   making the indictment publicly available, if it isn't already.

11             THE COURT:  I'm just trying to look at the docket.

12             If you could forward it to us, I would appreciate

13   that.  Just scanning very quickly, I'm not seeing it.  It is

14   still listed as a sealed indictment.

15             MR. REBOLD:  My colleague, Mr. Felton, just apprised

16   me that docket entry number three on ECF should be the order

17   unsealing the indictment.  I'm trying to pull it up myself now.

18             THE COURT:  It is.  Order to unseal.  Yes.  You can

19   access it.

20             THE DEPUTY CLERK:  Document number two is actually --

21   can be publicly accessed when a case is sealed.

22             THE COURT:  That's what I'm saying.  I can call it up

23   when I click on it.

24             OK.  Thank you very much both Ms. Dempsey and counsel.

25             All right.  Mr. Rebold, what's the status of the

L38sDZHa

 1    speedy trial clock?

 2              MR. REBOLD:  Your Honor, I think today would be the

 3    first day.  Today is the date of arraignment.  So, to my

 4    knowledge, no speedy trial time has elapsed just yet.

 5              THE COURT:  OK.  Thank you.

 6              Do any of the defense counsel have anything they wish

 7    to add to or any disagreement with anything -- obviously, you

 8    dispute the charges -- but anything you wish to comment on with

 9    respect to what Mr. Rebold has put on the record?

10              MR. AIDALA:  No, your Honor.

11              THE COURT:  All right.  Thank you.

12              Mr. Lazzaro?

13              MR. LAZZARO:  No, your Honor.

14              THE COURT:  Who was that?

15              MR. FINEMAN:  Michael Fineman.

16              Nothing further, your Honor.

17              THE COURT:  All right.  Mr. Fineman.

18              MR. LAZZARO:  Mr. Lazzaro.  Judge, nothing further.

19              THE COURT:  I'm sorry.  Thank you.

20              We've heard from all three defendants?

21              MR. AIDALA:  Yes, your Honor.

22              MR. FINEMAN:  Yes, your Honor.

23              MR. LAZZARO:  Yes, your Honor.

24              THE COURT:  You need to remember to please identify

25    yourselves when you address the court so that the court

L38sDZHa

```
1    reporter knows who it is that is answering, and that I know.

2            All right.  Mr. Rebold, are there any victims who need

3    to be notified under the Crimes Victims Act?

4            MR. REBOLD:  Not that I'm aware of at this time.  I

5    think to the extent there are victims, they would be people who

6    also theoretically are coconspirators who submitted fraudulent

7    applications with assistance of the charged defendants.

8            So, I'm sorry, that's a longer way of me saying no.

9            THE COURT:  All right.  Let's talk about discovery.

10           I did post on the docket in this case an order

11   pursuant to Rule 5(f) of the Federal Rules of Criminal

12   Procedure.  I will also remind the government orally, this is

13   the first time that we've all been together at one court

14   appearance.  So I remind you orally on the record of your

15   obligation to comply with your duties under Brady v. Maryland

16   and under the  U.S. v. Giglio  case and their progenies.

17           You're obligated to disclose to the defense all

18   information, whether admissible or not, that is favorable to

19   the defendant, material either to guilt or to punishment, and

20   known to the prosecution.

21           Possible consequences for noncompliance may include

22   dismissal of individual charges or of the entire case,

23   exclusion of evidence, and professional discipline or court

24   sanctions on any attorney responsible for any violation of

25   disclosure obligations.
```

L38sDZHa

1          As I say, I have entered a written order more fully

2     describing these obligations and the possible consequences of a

3     failure to meet them.  I direct the prosecution to review and

4     comply with that order.

5          Counsel, do you understand your obligations with

6     respect to discovery and commit to fulfill them in this matter?

7          MR. REBOLD:  Yes, your Honor.  We both understand our

8     obligations and commit to fulfill them.

9          THE COURT:  All right.  Can you please talk to me

10    about discovery?

11         What's the status?  What type of evidence do you

12    expect to produce and how long do you need to do so?

13         MR. REBOLD:  So, taking us in reverse order, your

14    Honor, we are requesting about six weeks, if that is acceptable

15    to the court and defense counsel, to produce what I expect will

16    be the bulk of discovery, which includes, among other things,

17    recordings of meetings and conversations between witnesses and

18    the defendants, draft translations and transcripts of those

19    conversations, search warrants and search warrant results,

20    agent reports, and among other things, device -- electronic

21    devices that are being searched, e-mail accounts that are being

22    searched, and USCIS files that are being collected.

23         I would caution your Honor that the USCIS files, to

24    collect those, I think, is a lengthy process.  We are trying to

25    track down, frankly, every USCIS file that can be connected to

1    any of these defendants, any application.  We are testing as

2    wide as we can.  It may take some time to get all of those.

3          We do intend to produce discovery on a rolling basis,

4    and certainly would commit to working with counsel to try to

5    push out as quickly as possible the things that I think would

6    be of most interest to them, both in terms of proof of guilt

7    from the government's perspective and the sorts of things that

8    would form the basis of a suppression motion or a motion to

9    dismiss.

10         There are other things like electronic devices that

11   we have recovered that will require the government to undergo a

12   series of reviews that will probably cause those devices to be

13   reviewed over more than just six weeks.  And just to lay that

14   out, your Honor, we have recovered a number of computers, for

15   example, and at least one cellular telephone that we intend to

16   search pursuant to a warrant.

17         Those searches require agents to first translate most

18   of the communications from Russian to English so they

19   understand what they are looking at, requires them to then

20   conduct a privilege review, which in this particular case is

21   particularly onerous, as the court may imagine, because many of

22   these communications on their face will be privileged, unless

23   there is an exception and they need to be reviewed for a crime

24   fraud exception.  For example, there is a marriage privilege

25   that may come up between Ms. Dzhamgarova and Mr. Arcadian.  And

L38sDZHa

1    then on top of all of that, a relevance review needs to be

2    conducted.

3            I will float now, and I have not raised this with

4    defense counsel, but to the extent attorneys for the defendants

5    are willing, upon the furnishing of the warrants to consent to

6    the productions of the full devices, to all of the codefendants

7    that would obviously speed up and facilitate this production.

8    But in the absence of that, it may take quite some time to

9    conduct those reviews and turn over those records, and we'll

10   just wanted to flag that for the court, because those

11   particular searches and discovery make up a bulk of the

12   requested six-week window.

13           THE COURT:  How long, realistically, are you talking

14   about for everything?

15           MR. REBOLD:  Well, the devices, I just hesitate to

16   say, your Honor, because we haven't even gotten into many of

17   them yet.  Some of them could be empty, some of them could have

18   terabytes of data.  I don't know about the number of

19   interpreters that we'll have.

20           I can certainly endeavor to update the court in the

21   absence of consent from the parties to just provide a full

22   download of the devices.  And the USCIS files, we're also in a

23   sort of we don't know what we don't know stage at this moment

24   because we just don't know how many files there are.

25           But, again, I do think that the vast majority of our

L38sDZHa

1    evidence in this case will be turned over within the next few

2    weeks.

3            THE COURT:  All right.  I'm sorry.  Go ahead.

4            MR. REBOLD:  Certainly the evidence that I would at

5    least conceive would form the basis of any pretrial motions.

6            THE COURT:  Does anyone wish to be heard on the

7    defense side?

8            MR. AIDALA:  This is Arthur Aidala, your Honor.

9            I guess, obviously, we're all going to have to be a

10   little flexible until Mr. Rebold seems to have a better handle

11   of what he has.  Obviously we will turn over whatever devices

12   he needs to upload the discovery on, whether it is hard drives,

13   etc., etc.

14           THE COURT:  All right.  Are the parties anticipating a

15   protective order in this case?

16           MR. REBOLD:  I'm sorry, your Honor.  Yes, I intend to

17   convey to defense counsel, in short order, a proposed

18   protective order and --

19           THE COURT:  What do you mean in short order?

20           MR. REBOLD:  In the next 24 to 48 hours, if not

21   sooner.

22           THE COURT:  All right.

23           MR. REBOLD:  The case involves, among other things,

24   the USCIS applications.  Every single one of those contains a

25   lot of personal identifying information.  The devices belonging

L38sDZHa

1    to the individual defendants may contain a great deal of

2    personal identifying information.

3         The case is built on cooperating witnesses and other

4    civilian witnesses who are cooperating with the government

5    whose identities also warrant some protection.

6         THE COURT:  All right.  The reason I'm asking, I'm

7    trying to get a sense of what is a logical schedule for this

8    case.  In the normal course, at this conference, I would set a

9    date by which any motions addressed to discovery need to be

10   made and I would set a trial date.

11        But given the world we're living in, with all the

12   restriction from COVID, which impact both the court's

13   ability -- I cannot simply schedule a trial date, as I think

14   you're all aware, right now in the Southern District.  The way

15   we're operating is that when a case is trial ready, I put in a

16   request to the clerk's office on a quarterly basis, and then

17   I'm assigned a trial slot if one is available.

18        So we're already booked for the second quarter.  We

19   would be talking, at the very earliest, the third quarter of

20   this year.  But it is meaningless to just arbitrarily -- and,

21   in fact, you know, I can't just arbitrarily say a trial date.

22        Similarly, with respect to motion practice, I don't

23   want to arbitrarily set a motion deadline if we don't know how

24   long discovery is going to take.

25        So what I would propose to you, seems to me to make

L38sDZHa

1    the most sense, is for you to give me a realistic sense of how

2    long you think discovery will take, and we will then have a

3    conference, as we approach the end of that time frame, for

4    defendants to talk to me about, have you had full access to

5    that discovery, have you had the opportunity to review it with

6    your clients, do you anticipate motion practice with respect to

7    the discovery.  And if so, then we'll set the schedule for

8    motion practice and a target date or target quarter for the

9    trial of the case.

10            Does that make sense to people?

11            MR. REBOLD:  Your Honor, we, of course, defer to

12   whatever the court thinks makes sense and whatever defense

13   counsel wishes.  I think that we could commit to get the bulk

14   of discovery out, sort of the caveat that is laid out, within

15   about six weeks.  And if defense counsel wanted, you know, to

16   be given two months to review that and file motions, I think

17   that would make sense for the government.  And then maybe, you

18   know, four weeks for the government to respond from there and

19   two weeks for defense to reply.

20            But if the court and the parties think it makes more

21   sense to set an aspirational date for discovery and then confer

22   again when we reach that date, we, of course, are flexible and

23   and willing to do that.

24            THE COURT:  All right.  Sir.

25            MR. AIDALA:  I would prefer with what I believe the

L38sDZHa

1    court suggested was, which was let's see when we get the

2    discovery and then how voluminous the discovery is, to then set

3    a realistic date for motions and possibly a trial.

4           THE COURT:  Mr. Fineman or Mr. Lazzaro, anything from

5    either of you?

6           MR. FINEMAN:  Your Honor, I agree with Mr. Aidala.

7    The way the government is describing the search they are going

8    to be conducting for immigration documents and paperwork, I

9    imagine the discovery in this case could be quite voluminous,

10   and I would like to have as much time as possible to review the

11   paperwork as it pertains to my client, if and to what extent it

12   pertains to my client.

13          I would like a longer date to have an opportunity to

14   review the  discovery and come back and discuss a trial date.

15          THE COURT:  When are you proposing, sir?

16          Two months is May.  Are you proposing longer than

17   that?

18          MR. FINEMAN:  I personally would suggest, if the

19   government is going to take six weeks to provide discovery,

20   that we should have at least six weeks to review it.

21          THE COURT:  Mr. Lazzaro?

22          MR. LAZZARO:  What I would suggest, your Honor, is if

23   the government is going to take six weeks, I think we need at

24   least eight to 12 weeks to review it.  We should come back

25   maybe in four months for a status conference.

L38sDZHa

1          Then if there are any issues with respect to any

2     motions involved, then the court could set a motion schedule.

3     I just think at this stage, without seeing the discovery, it is

4     premature to set a trial date.

5          THE COURT:  I can't set a trial date.

6          MR. LAZZARO:  And there may even be an issue, Judge,

7     with them going through the phones, because that might be

8     privileged material and I don't know if the U.S. Attorney's

9     office has that right to go through that.

10          You might have to send a monitor, almost like what

11     happened with Michael Cohen and Donald Trump when they went

12     into Cohen's files.

13          THE COURT:  The parties are going to have to raise

14     that with me if and when the issue is ripe.

15          MR. LAZZARO:  I agree, Judge.  It may not be ripe, but

16     we have to see what they turn over.

17          THE COURT:  All right.  Today is March 8.  So if the

18     defendants want four months, which is what you said, I believe,

19     Mr. Lazzaro?

20          MR. LAZZARO:  Correct.

21          THE COURT:  We can reconvene.  That would put us

22     April, May, June, July, sometime in early July.

23          Ms. Dempsey, can you take a look at the calendar, and

24     I know that there is a week in early July that is not

25     available.

L38sDZHa

1              THE DEPUTY CLERK:  July 13.

2              THE COURT:  I think that doesn't work, right?  I think

3    I have a conflict.

4              THE DEPUTY CLERK:  You're right.  You're right.

5              Hold on.

6              (Pause)

7              July 6.

8              MR. AIDALA:  That's good for me, if it is good for the

9    court and co-counsel.

10             THE COURT:  I would rather do July 1, if we can.

11             Does that work, Ms. Dempsey?

12             THE DEPUTY CLERK:  It does.

13             THE COURT:  All right.  July 1 at 10:00 a.m., we will

14   have a further conference.

15             In the meantime, if there are motions that anybody

16   needs to bring to the court's attention, for example, there was

17   a mention about whether the government ought to have access to

18   certain devices or whether a monitor needs to be appointed.

19   Certainly you can bring on a motion in advance of that date.

20             But otherwise, at that conference on July 1, we will

21   talk about a schedule for any motions, including motions to

22   suppress evidence, or any other motion anyone wishes to make,

23   and we'll talk about what is a realistic time frame to request

24   a slot for trial.

25             In the meantime, I would like to speak to the

L38sDZHa

1    defendants for a moment.  I won't see you again then until

2    July, unless something comes up in the interim.  I want to just

3    note to each of you -- I'm not saying this should happen or

4    there is any reason this ought to happen -- but if for any

5    reason you need or you want to change counsel, I caution you do

6    not wait until the last minute.  If you have retained counsel

7    and you're eligible for appointed counsel or you have retained

8    counsel and for any other reason you want to change counsel, it

9    is critical that you raise that issue with the court as soon as

10   possible.

11          Some of you are lawyers.  You know and you understand,

12   you need time to prepare a case, and it will not be in your

13   interest to wait until the last minute.  Once a trial date is

14   set, it is set, and a change of counsel is not going to be a

15   reason to delay a trial.  And it will work to your detriment if

16   you wait until the very last minute.  I may not grant your

17   application, and you may being denied your request to change

18   counsel, or you may otherwise prejudice your own case if you

19   delay.

20          But as I said at the outside, I'm not suggesting to

21   any of you that there is a reason you should be requesting to

22   change counsel.  I'm just reminding you.

23          DEFENDANT DZHAMGAROVA:  Yes, your Honor.

24          DEFENDANT ARCADIAN:  Yes, your Honor.

25          THE COURT:  Mr. Reznik?

L38sDZHa

1          DEFENDANT REZNIK:  Yes, your Honor.

2          THE COURT:  All right.  Thank you.

3          DEFENDANT REZNIK:  Yes.

4          THE COURT:  I assume the conditions of release will

5    remain the same; there are no applications?

6          Mr. Rebold, that is addressed to you.

7          MR. REBOLD:  I'm sorry, your Honor.

8          The government is satisfied with the conditions that

9    have been agreed upon by the parties during the defendants'

10   respective presentments over the last week.

11         I'm sorry, your Honor.  If now is the time, we would

12   make an application to the court that all speedy trial time --

13         THE COURT:  Hold on.  Hold on for a minute with the

14   speedy trial clock.

15         MR. REBOLD:  Sure.

16         THE COURT:  Are there any applications from any

17   defendants with respect to the conditions of release?

18         Mr. Aidala?

19         MR. AIDALA:  No, your Honor.

20         THE COURT:  Mr. Lazzaro?

21         MR. LAZZARO:  No, your Honor.

22         THE COURT:  All right.  Thank you.

23         Mr. Fineman?

24         MR. FINEMAN:  No, your Honor.

25         THE COURT:  All right.  Mr. Rebold, I'll hear from you

L38sDZHa

1    with respect to the speedy trial clock.

2            MR. REBOLD:  Sorry for getting ahead of myself there,

3    your Honor.

4            THE COURT:  That's all right.

5            MR. REBOLD:  Your Honor, the government respectfully

6    requests that all speedy trial time between today and July 1 of

7    this year be excluded in the interest of justice so that the

8    government can produce discovery to the defendants, so that the

9    defendants can review those materials and contemplate pretrial

10   motions, and perhaps so the parties can engage in negotiation

11   of a pretrial disposition that may be favorable to the

12   defendants vis-a-vis what they may be facing following trial.

13           THE COURT:  All right.  Anything from the defendants,

14   Mr. Aidala?

15           MR. AIDALA:  No, your Honor.  No objection.

16           THE COURT:  No objection.  OK.

17           Mr. Lazzaro?

18           MR. LAZZARO:  Nothing, your Honor.

19           THE COURT:  Is that consent, objection?

20           MR. LAZZARO:  No, I consent.

21           THE COURT:  All right.

22           Mr. Fineman?

23           MR. FINEMAN:  Your Honor, I consent.

24           THE COURT:  All right.  I will exclude time from today

25   until July 1 under the Speedy Trial Act.  I do find that the

L38sDZHa

1    ends of justice served by excluding such time outweigh the

2    interests of the public and each of the defendants in a speedy

3    trial because it will allow time for the government to prepare

4    and produce discovery to the defendants, it will allow time for

5    the counsel to review that evidence, to share it with their

6    clients, the defendants, and review it with the defendants, to

7    consider whether there are any motions that, if any, the

8    defendants wish to make, and it will allow time for the parties

9    to, if they so wish, to negotiate a potential consensual

10   disposition of the case.

11           In addition, there is no objection from

12   Ms. Dzhamgarova and Mr. Arcadian and Mr. Reznik consent to the

13   exclusion of time.

14           Is there anything else we can talk about today or

15   accomplish, Mr. Rebold?

16           MR. REBOLD:  Not from the government, your Honor.

17           THE COURT:  Mr. Aidala?

18           MR. AIDALA:  No.  Thank you very much, your Honor.

19           THE COURT:  Thank you.

20           Mr. Lazzaro?

21           MR. LAZZARO:  Nothing, your Honor.

22           THE COURT:  Thank you.

23           Mr. Fineman?

24           MR. FINEMAN:  Nothing further, your Honor.  Thank you.

25           THE COURT:  All right.  All that remains for me then

L38sDZHa

1    is to thank our court reporter, Ms. Frankó, very much.

2              I wish everyone a good afternoon, and please stay safe

3    and healthy.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25