1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          21 CR 58 (MKV)

5    ILONA DZHAMGAROVA,

6                   Defendant.             Plea
     ------------------------------x
7
                                          New York, N.Y.
8                                         January 25, 2023
                                          11:10 a.m.
9

10   Before:

11

12                   HON. MARY KAY VYSKOCIL,

                                          District Judge
13
                            APPEARANCES
14
     DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  JONATHAN REBOLD
          DAVID FELTON
17        Assistant United States Attorneys

18   AIDALA BERTUNA & KAMINS, P.C.
          Attorneys for Defendant
19   BY:  ARTHUR L. AIDALA

20

     Also Present:
21   Deniele DeBoer, FBI

22

23

24

25


                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

1              (Case called)

2              MR. REBOLD:  Good morning again, your Honor, Jonathan

3   Rebold for the government.  Joined at counsel table by AUSA

4   David Felton and, further to my left, FBI Special Agent Deniele

5   DeBoer.

6              THE COURT:  Good morning, everyone.

7              Good morning, Special Agent DeBoer.  I don't think we

8   have met.

9              MS. DeBOER:  Good morning.

10             MR. AIDALA:  Good morning, your Honor, Arthur Aidala

11  for Ms. Dzhamgarova.

12             THE COURT:  Good morning Mr. Aidala.

13             Good morning, Ms. Dzhamgarova.

14             THE DEFENDANT:  Good morning, your Honor.

15             THE COURT:  Good morning again to our court reporter.

16  Thank you for your patience.

17             As I think you all are aware, we are here today for a

18  change of plea hearing for Ms. Dzhamgarova.

19             Let me just clarify for the record, ma'am, do you

20  speak and understand English clearly?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Thank you.

23             I had entered an order asking for clarity on that just

24  because I want the record to be crystal clear, but I believe

25  every proceeding so far you have told us as well you do not

1    want an interpreter, correct?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Did you tell me once that you actually act

4    as an interpreter yourself?

5            THE DEFENDANT:  No, your Honor.

6            THE COURT:  That might have been one of your

7    codefendants.

8            In any event, though, no question you can understand

9    me and you can communicate clearly with your counsel?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  Thank you.

12           There are no victims under the Crime Victims Act,

13   correct?

14           MR. REBOLD:  Correct.

15           THE COURT:  I'm informed that the defendant has an

16   application to withdraw her plea of not guilty and, pursuant to

17   a plea agreement with the government, enter a plea of guilty to

18   Count One of the indictment filed in this case at ECF number 2.

19           Count One charges Ms. Dzhamgarova with conspiracy to

20   commit immigration fraud, in violation of Title 18, United

21   States Code, Section 371, and in particular the government

22   alleges that Ms. Dzhamgarova conspired with others to submit

23   fraudulent asylum applications to the United States Citizenship

24   and Immigration Services.

25           Is that accurate, Mr. Aidala?

1               MR. AIDALA:  Yes, your Honor.

2               THE COURT:  I have a copy of an agreement.  It is a

3     six-page letter agreement on the letterhead of the United

4     States Department of Justice, the office of the U.S. Attorney

5     for the Southern District of New York, dated January 17, 2023,

6     addressed to Mr. Arthur L. Aidala, in re United States v. Ilona

7     Dzhamgarova, 21 CR 58 (MKV), that will be marked as Government

8     Exhibit 1 in this case.

9               Ms. Dzhamgarova, before I accept your plea of guilty,

10    there are a number of questions that I need to ask you, and I

11    must ask you these questions while you are under oath.  I'm

12    asking you these questions to ensure that your plea is in fact

13    a valid plea.  I may cover points more than once.  I may cover

14    matters that were addressed in various forms or agreements that

15    you may have signed.  I'm doing that because it is very

16    important that you understand what's happening here today.

17              So if at any point, for any reason, you want to talk

18    to Mr. Aidala, please just tell me that and we will take a

19    pause.  I'll allow you to do that.  If you don't understand

20    something that I'm asking you, please tell me.  I'll try to

21    clarify it, or you certainly can have the opportunity to speak

22    at that point with Mr. Aidala.

23              Will you let me know if you need to?

24              THE DEFENDANT:  Yes, your Honor.

25              THE COURT:  Ms. Dempsey, would you please administer

1   the oath.

2            (Defendant sworn)

3            THE COURT:  Ms. Dzhamgarova, do you understand that

4   you have now solemnly promised to tell the truth and that if

5   you answer any of my questions falsely, your false or untrue

6   answers may later be used against you in another prosecution

7   for perjury or making a false statement?

8            THE DEFENDANT:  Yes, I do, your Honor.

9            THE COURT:  How old are you, ma'am?

10           THE DEFENDANT:  Forty-six.

11           THE COURT:  How far have you gone in school?

12           THE DEFENDANT:  Master of law.

13           THE COURT:  You do not have a J.D.?

14           THE DEFENDANT:  No.

15           THE COURT:  Where did you get your master of law?

16           THE DEFENDANT:  In Hofstra Law School.

17           THE COURT:  You have told me repeatedly you do speak

18  and understand English clearly?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  So far, have you had any problem at all

21  with understanding me?

22           THE DEFENDANT:  No, your Honor.

23           THE COURT:  Are you a citizen of the United States?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Were you born here or are you naturalized?

1              THE DEFENDANT:  Naturalized.

2              THE COURT:  Are you now or have you recently been

3    under the care of a medical doctor or other medical

4    professional?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  For what and how recently.

7              THE DEFENDANT:  I be seeing a psychiatrist for three

8    years, and I'm seeing a psychologist for two years.

9              THE COURT:  We will talk in a minute about mental

10   health, but in terms of your physical health, medical doctor,

11   have you been seeing any other medical doctor?

12             THE DEFENDANT:  Yes.  I have diabetes, I have high

13   blood sugar, and I also have a bladder issue.  So I see the

14   doctors every three weeks.

15             THE COURT:  And you started to tell me that you have

16   been treated for mental health issues?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  So you see a psychiatrist and a

19   psychologist you told me, correct?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Do any of your mental health issues for

22   which you are seeing mental health professionals or any of your

23   medical conditions interfere with your ability to understand

24   what we are doing today?

25             THE DEFENDANT:  No, your Honor.

 1              THE COURT:  Have you ever been treated or hospitalized

 2    for any type of addiction, including to drugs or to alcohol?

 3              THE DEFENDANT:  No, your Honor.

 4              THE COURT:  Have you ever been addicted to drugs or

 5    alcohol, even if you have not been treated or hospitalized?

 6              THE DEFENDANT:  No, your Honor.

 7              THE COURT:  In the past 24 hours, have you taken any

 8    kind of drugs, pills, or medicine whatsoever?

 9              THE DEFENDANT:  I take the medicine.

10              THE COURT:  For the conditions that you outlined for

11    me.

12              THE DEFENDANT:  Yes, your Honor.

13              THE COURT:  Do any of those medications interfere with

14    your ability to think or to reason clearly?

15              THE DEFENDANT:  No, your Honor.

16              THE COURT:  In the past 24 hours, have you had any

17    alcohol to drink?

18              THE DEFENDANT:  No, your Honor.

19              THE COURT:  Is your mind clear today?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  You understand what we are doing?

22              THE DEFENDANT:  Yes, your Honor.

23              THE COURT:  Are you feeling well physically?  In other

24    words, are you healthy?

25              THE DEFENDANT:  No.

1          THE COURT:  You are not healthy or you're not feeling

2     well?

3          THE DEFENDANT:  No, I'm not feeling well, but I feel

4     good.

5          THE COURT:  When you tell me you are not healthy, do

6     you just mean the conditions that you outlined for me, or is

7     there anything about your physical condition today that makes

8     it difficult for you to participate in today's proceeding and

9     to understand what we are doing?

10          THE DEFENDANT:  No, your Honor.  Just the condition

11     that I mentioned before.

12          THE COURT:  Are you represented by counsel?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  And who is your counsel?

15          THE DEFENDANT:  Mr. Aidala.

16          THE COURT:  Are you satisfied with Mr. Aidala?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do either counsel have any doubt as to

19     Ms. Dzhamgarova's competence to plead at this time?

20          MR. REBOLD:  The government has no doubt.  No, your

21     Honor.

22          THE COURT:  Thank you.

23          Ms. Dzhamgarova, your lawyer tells me that you wish to

24     withdraw your plea of not guilty and enter a plea of guilty to

25     Count One of the indictment in this case.

1              Is that what you wish to do this morning?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Have you fully discussed your case with

4    Mr. Aidala, including the charge to which you intend to plead

5    guilty and any possible defenses to those charges?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Have you discussed the consequences of

8    entering a plea of guilty?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Are you satisfied with your ability to

11   consult with Mr. Aidala and his representation of you?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  On the basis of Ms. Dzhamgarova's

14   responses to my questions and my observations of her demeanor,

15   I do find that she is fully competent to enter an informed plea

16   at this time.

17             Ma'am, before I accept any plea from you, I need to

18   ask you certain additional questions which are intended to

19   satisfy me that you want to plead guilty because you are in

20   fact guilty and that you fully understand your rights and the

21   consequences of your plea.

22             I am going to begin by describing to you certain

23   rights that you have under the Constitution and the laws of the

24   United States.  You will be giving up these rights if you enter

25   a plea of guilty.  Please listen very carefully, and I remind

1   you, again, if you do not understand something that I'm saying

2   or describing, please stop me and either I or Mr. Aidala will

3   try to explain it to you more fully.

4            Will you do that, please?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  Under the Constitution and the laws of the

7   United States, you have the right to a speedy and a public

8   trial by a jury on the charges against you which are contained

9   in the indictment.

10            Do you understand that?

11            THE DEFENDANT:  Yes, your Honor.

12            THE COURT:  Do you understand that you have the right

13  to plead not guilty and to continue to plead not guilty to the

14  charge against you?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  Do you understand that if there were a

17  trial, you would be presumed innocent and the government would

18  have to prove you guilty by competent evidence and beyond a

19  reasonable doubt.  You would not have to prove at trial that

20  you were innocent.

21            Do you understand that?

22            THE DEFENDANT:  Yes, your Honor.

23            THE COURT:  Do you understand that if there were a

24  trial, a jury made up of 12 people selected from this district,

25  the Southern District of New York, would have to agree

1   unanimously in order to find you guilty?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  If there were a trial, you would have the

4   right to be represented by an attorney at trial and at all

5   other stages of the proceeding.  If you couldn't afford one, an

6   attorney would be provided to you free of cost.

7          Do you understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  And do you understand that if there were a

10  trial, you would have the right to see and to hear all of the

11  witnesses against you.  Your lawyer, Mr. Aidala, could

12  cross-examine those witnesses.  You would have the right to

13  have your attorney object to the government's evidence and

14  offer evidence on your behalf, if you so desired.  You would

15  have the right to have witnesses required to come to court to

16  testify in your defense, and you would have the right to

17  testify yourself, but you would not be required to testify.

18         Do you understand that?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Do you understand that if there were a

21  trial and you decided not to testify, no adverse inference

22  could be drawn against you.  By that, I mean, the jury would be

23  instructed that it could not assume that you didn't testify

24  because you were guilty or because you were hiding something.

25         Do you understand that?

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  Do you understand that if you were

3  convicted at trial you would have the right to appeal the jury

4  verdict?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  Do you understand each and every one of

7  these rights that I have just outlined for you?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Do you have any questions about these

10 rights?

11          THE DEFENDANT:  No, your Honor.

12          THE COURT:  Do you wish to speak to Mr. Aidala before

13 we proceed any further?

14          THE DEFENDANT:  No, your Honor.

15          THE COURT:  Do you understand that by entering a plea

16 of guilty today, you will be giving up each and every one of

17 these rights, you will be waiving these rights.

18          Do you understand that?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  And do you understand that you will be

21 waiving any possible claim that your constitutional rights may

22 have been violated and you will not have a trial.

23          Do you understand that?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Do you understand that by entering a plea

1    of guilty, you will also have to give up your right not to

2    incriminate yourself because later in this proceeding I'll ask

3    you some questions about what you did in order to satisfy

4    myself that you are guilty as charged, and you will have to

5    admit and acknowledge your guilt.

6              Do you understand that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Do you understand that you can change your

9    mind right now and refuse to enter a plea of guilty?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  You know that you do not have to enter

12   this plea if for any reason you do not want to do so.

13             Do you understand?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Do you have a copy of the indictment in

16   this case, Ms. Dzhamgarova, containing the charges against you?

17             THE DEFENDANT:  Yes, I do.

18             THE COURT:  Have you read that indictment?

19             THE DEFENDANT:  Yes, I did.

20             THE COURT:  Did you discuss it with your lawyer?

21             THE DEFENDANT:  Yes, I did.

22             THE COURT:  I can read the indictment out loud here in

23   open court if you need me to do so, or you may waive public

24   reading.

25             THE DEFENDANT:  I'm waiving.

1          THE COURT:  You waive public reading?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Thank you.

4          Count One of the indictment charges you with

5    conspiracy to commit immigration fraud, in violation of Title

6    18, United States Code, Section 371.  In particular, the

7    government alleges that you conspired with others to submit

8    fraudulent asylum applications to the United States Citizenship

9    and Immigration Services.

10          Is that your understanding of the charge against you?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Pursuant to a plea agreement, the

13   government will accept a plea of guilty to Count One of the

14   indictment.

15          Is that your understanding?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  And is that what you wish to do this

18   morning?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  May I ask, please, Mr. Rebold, for you to

21   state the elements of the offense charged in Count One of the

22   indictment.

23          MR. REBOLD:  Yes, your Honor.  The following are the

24   three elements under Title 18, United States Code, Section 371

25   charging conspiracy:  First, that there was an agreement or

understanding among two or more persons to commit a federal

crime, in this case immigration fraud; second, that the

defendant knowingly and willfully became a member of the

agreement with the intent to further its illegal purpose; and,

third, one of the members of the conspiracy knowingly committed

at least one overt act in furtherance of the conspiracy.  There

are two objects of the conspiracy.  They are both immigration

fraud.  The first is under Title 18, United States Code,

Section 1546(a), paragraph 1.  The second is charged under the

same statute but under paragraph 4.

          Under paragraph 1, these are the following elements:

First, that the defendant obtained or used or attempted to use

or utter or possess or accepted or received a falsely made

document; second, that the document in question was a visa form

I-94 or other document prescribed by statute or regulation for

entry into or as evidence of authorized stay or employment in

the United States; and, third, the defendant knew at the time

the document was obtained or used or attempted to be used or

uttered or possessed or accepted or received or that the

document was falsely made or to have been procured by means of

any false claim or statement or to have otherwise been procured

by fraud or unlawfully obtained.

          The following are the elements under Title 18, United

States Code, Section 1546(a), paragraph 4:  First, a false

statement was made; second, the statement was made in a

1   document required by the immigration laws or regulations of the

2   United States, in this case a form I-589 asylum application

3   and/or affidavit; third, the statement was made under oath or

4   penalty of perjury; fourth, the statement was false as to a

5   material fact; and, fifth, the defendant knew the statement was

6   false when made or presented.

7           The government would also need to prove venue by a

8   preponderance of the evidence.

9           THE COURT:  Thank you.

10          Ms. Dzhamgarova, do you understand that the government

11  would have to prove each and every part or element that Mr.

12  Rebold has just laid out with respect to Count One beyond a

13  reasonable doubt at trial if you did not plead guilty?

14          THE DEFENDANT:  Yes, I do understand.

15          THE COURT:  Do you understand the matters that the

16  government would have to prove if you went to trial?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Have you had an opportunity to discuss the

19  elements of the offense with which you are charged with your

20  attorney?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Let's talk about the potential penalties

23  for the offense to which you tell me you intend to plead.

24          Do you understand that the maximum possible term of

25  imprisonment for the offense in Count One to which you are

1    pleading guilty is a term of imprisonment of five years?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you understand that Count One can also

4    include a maximum term of supervised release after you are

5    released from prison of up to three years?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  In addition to these restrictions on your

8    liberty, do you understand that the maximum possible punishment

9    for Count One also includes certain financial penalties?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Do you understand that the maximum fine

12   allowed is $250,000, or twice the gross pecuniary gain relating

13   to the offense or twice the loss to persons other than yourself

14   as a result of the offense, whichever is greater?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  And do you understand that I must also

17   impose a mandatory $100 special assessment per count and that

18   is payable immediately at sentencing?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Now, by statute I must also order you to

21   pay restitution to any victims.

22             Do you understand that?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Mr. Rebold, let me ask you again, are

25   there any victims?

1              MR. REBOLD:  No, there are not.

2              THE COURT:  So the government is not seeking

3    restitution?

4              MR. REBOLD:  That's correct.

5              THE COURT:  Is that your understanding,

6    Ms. Dzhamgarova?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Thank you.

9              THE DEFENDANT:  Thank you.

10             THE COURT:  Do you also understand, though, that as

11   part of your agreement you have agreed to forfeit to the United

12   States a sum of money representing proceeds traceable to the

13   commission of the offense in Count One to which you are

14   pleading guilty?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Do you understand that that forfeiture

17   amount will not reduce any fine, restitution, cost of

18   imprisonment or any other financial penalty that the Court may

19   impose?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  I have a copy of a preliminary order of

22   forfeiture/money judgment that was submitted to me by the

23   government.

24             Mr. Aidala, have you received and reviewed that order

25   and is it on consent?

1              MR. AIDALA:  Yes, your Honor.

2              THE COURT:  Ms. Dzhamgarova, you have reviewed that

3    order with your lawyer?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  And you do consent to its terms?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Let me now give you some information and

8    verify your understanding of the supervised release aspect of

9    the potential penalty.

10             Supervised release means that you will be subject to

11   monitoring when you are released from any term of imprisonment.

12   And during that period of supervised release certain terms and

13   conditions will be imposed.  If you violate any of the set

14   terms and conditions, you can be reimprisoned without a jury

15   trial.

16             Do you understand that?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Do you understand that if you are on

19   supervised release and you don't comply with any of the set

20   terms or conditions, you can be returned to prison for up to

21   two years?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Do you understand that you will not be

24   given any credit for the time that you served in prison as a

25   result of your sentence, and you will not get no credit for the

1  time that you spent on supervised release prior to the

2  violation.

3          Do you understand that?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Do you understand as well that there is no

6  parole in the federal system?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  If you are sentenced to prison, you will

9  not be released early on parole.  There is a limited

10 opportunity to earn credit for good behavior, but you would

11 have to serve at least 85 percent of the time to which you are

12 sentenced, and there might or might not be other opportunities

13 for early release under the First Step Act.

14         Do you understand all of that?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Do you understand that if I accept your

17 guilty plea and adjudge you guilty, you may be deprived of

18 certain valuable civil rights, including the right to vote, the

19 right to hold public office, the right to serve on a jury, and

20 the right to possess any kind of firearm if you currently have

21 or otherwise could attain such rights.

22         Do you understand that?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  You have told me that you are a citizen of

25 the United States.  I need to explain to you and be sure you

1  understand that if I accept your plea of guilty, there could be

2  adverse effects on your immigration status, including further

3  detention following completion of your sentence or removal or

4  deportation from the United States, particularly if it turned

5  out that you were not a United States citizen.

6            Do you understand that?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  Did you discuss your immigration situation

9  and possible immigration consequences of your plea with Mr.

10  Aidala?

11            THE DEFENDANT:  Yes, your Honor.

12            THE COURT:  And you still wish to proceed,

13  notwithstanding those potential consequences?

14            THE DEFENDANT:  Yes, your Honor.

15            THE COURT:  Let's talk for a few moments about the

16  sentencing guidelines.

17            Do you understand that under current law there are

18  sentencing guidelines that I must consider in determining your

19  sentence?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  And have you spoken to Mr. Aidala about

22  the sentencing guidelines?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  And do you understand that in addition to

25  considering the sentencing guidelines, I must, in imposing

1  sentence, consider certain additional factors that are

2  contained in Title 18, United States Code, Section 3553?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Do you understand that I have discretion,

5  while taking the sentencing guidelines into account, to

6  sentence you to any period of imprisonment up to five years?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Do you understand that even though the

9  plea agreement includes a stipulated or agreed sentencing

10 guidelines calculation, I cannot determine what your sentence

11 will be until after a presentence report is prepared by the

12 probation department and you and your lawyer, the government

13 and its lawyer have a chance to review that report, to

14 challenge any of the facts reported by the probation office.

15         Do you understand that?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Now, according to the plea agreement, you

18 have agreed that the guidelines range appropriate to the

19 offense in Count One under the circumstances of your case to

20 which you are pleading guilty is 33 to 41 months of

21 incarceration and that the applicable fine range for your case

22 is 15,000 to $150,000.

23         Is that your understanding?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Do you understand that that stipulation

1    does not bind the Court or the probation department as to the

2    facts on which it is based, how to apply the sentencing

3    guidelines to the facts, or what an appropriate sentence will

4    be.

5                Do you understand that all of that?

6                THE DEFENDANT:  Yes, your Honor.

7                THE COURT:  Do you understand that I may decide to

8    impose a sentence outside the guidelines range?

9                THE DEFENDANT:  Yes, your Honor.

10               THE COURT:  Do you understand that, in addition, I

11   must order restitution to any victims, but the government has

12   advised me there are no victims and it is not seeking

13   restitution in this case.

14               Is that your understanding?

15               THE DEFENDANT:  Yes, your Honor.

16               THE COURT:  Do you understand that if your lawyer or

17   anyone else has attempted to predict or to estimate for you

18   what your sentence will be, that estimate or prediction could

19   well be wrong.

20               Do you understand that?

21               THE DEFENDANT:  Yes, your Honor.

22               THE COURT:  No one, not your lawyer, Mr. Aidala, not

23   the government or its lawyers, can or should give you any

24   assurance as to what your sentence will be since I cannot

25   determine your sentence until after the probation office report

1   is completed and I have ruled on any challenges to the report

2   and determined, under the law, what your sentence will be.

3           Do you understand that?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  Do you also fully understand that even if

6   your sentence is different from what anyone told you it might

7   be or what you might expect or hope or if you're surprised or

8   disappointed by your sentence, if I accept your guilty plea

9   today, you will be bound to that plea and you will not be

10  allowed to withdraw your plea at the time of sentencing or at

11  any time after today?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Do you understand that even if the

14  government doesn't take a position or oppose what your attorney

15  asks me to impose as your sentence, I am obligated to impose

16  whatever sentence I believe is appropriate under the

17  circumstances and the applicable law, and after today, if I

18  accept your plea, you will not have a right to withdraw your

19  plea.

20          Do you understand that?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Do you understand that you may have the

23  right to appeal your sentence under certain circumstances, even

24  if your plea agreement provides your waiving the right to

25  appeal?

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  Are you now serving any state or federal

3    sentence?

4           THE DEFENDANT:  No.

5           THE COURT:  Are you being prosecuted for any other

6    crime aside from the one we are discussing today?

7           THE DEFENDANT:  No your Honor.

8           THE COURT:  I have a copy of the plea agreement that I

9    outlined earlier on the record that we have marked as

10   Government Exhibit 1.

11          Do you have a copy of that, ma'am?

12          THE DEFENDANT:  Yes, I do.

13          THE COURT:  Have you signed that agreement on the last

14   page above where your name is typed?

15          THE DEFENDANT:  Yes, I did, your Honor.

16          THE COURT:  Is that your signature?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  And you signed it on the date indicated?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Before you signed the agreement, did you

21   read it carefully?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Did you talk about it and discuss it with

24   Mr. Aidala before you signed the agreement?

25          THE DEFENDANT:  Yes, your Honor.

1            THE COURT:  Did Mr. Aidala explain to you all of the

2    terms and conditions of the agreement?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Did you fully understand the agreement

5    before you signed it?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Do you have any questions about the

8    agreement?

9            THE DEFENDANT:  No, your Honor.

10           THE COURT:  Do you wish to speak to Mr. Aidala at this

11   time?

12           THE DEFENDANT:  No, your Honor.

13           THE COURT:  Do you understand that your plea agreement

14   provides that you are giving up or you are waiving your right

15   to appeal or to litigate or challenge your sentence, under

16   Title 28, United States Code, Section 2255 and/or 2241, if I

17   sentence you within or below the guidelines range set forth in

18   the plea agreement?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  Do you understand that you are under no

21   obligation to waive your rights to appeal your sentence?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  Do you understand that your plea agreement

24   provides that you are waiving any right to appeal or to attack

25   your conviction on the basis that the government hasn't

1    provided you with discovery materials, exculpatory materials,

2    except information establishing factual innocence, or any

3    material to impeach the government's witnesses against you?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Do you understand you are under no

6    obligation to waive those rights?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Do you understand that your agreement

9    provides that you will not move for a downward departure under

10   the sentencing guidelines or seek any judgment under the

11   guidelines that's not described in the plea agreement but that

12   you may make arguments for a lower sentence under the general

13   sentencing statute, known as Section 3553(a) that I referenced

14   earlier?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Do you understand you are under no

17   obligation to enter into such an agreement?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Do you understand that your plea agreement

20   provides that you are waiving any challenge to your plea

21   agreement, your conviction, or your sentence based on any

22   immigration consequences of your plea, regardless of any advice

23   that you may have received regarding such immigration

24   consequences?

25             THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Do you understand that you are under no

2    obligation to make this waiver?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Do you still wish to proceed with entry of

5    a plea of guilty, notwithstanding any potential immigration

6    consequences of that plea?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Does the agreement, the plea agreement I'm

9    talking about, accurately reflect your complete and total

10   understanding of the entire agreement between you, your lawyer,

11   and the government and its lawyers?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Is everything you understand about your

14   plea covered in this agreement?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Has anything been left out?

17         THE DEFENDANT:  No, your Honor.

18         THE COURT:  Apart from what's contained in the plea

19   agreement, have any promises been made to you in order to get

20   you to plead guilty?

21         THE DEFENDANT:  No, your Honor.

22         THE COURT:  Has anyone threatened you in any way to

23   get to you plead guilty?

24         THE DEFENDANT:  No your Honor.

25         THE COURT:  Has anyone coerced you or induced you in

1    any way to get you to plead guilty today?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Are you pleading guilty or are you telling

4    me you want to plead guilty freely and of your own free will?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Knowing everything that we have just

7    discussed, do you still wish to plead guilty pursuant to the

8    plea agreement?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Mr. Aidala, do you know of any valid

11   reason why your client would prevail at trial or why she should

12   not be permitted to plead guilty?

13             MR. AIDALA:  No, your Honor.

14             THE COURT:  Ms. Dzhamgarova, we are now at the point

15   in the proceeding where I need for you to tell me in your own

16   words what it is that you did that makes you guilty of the

17   crime to which you tell me you intend to plead guilty.  I need

18   you to tell me what you did, where you did it, when you did it,

19   and with whom you did it.

20             Are you prepared?

21             THE DEFENDANT:  Yes.

22             During the period of 2016 to 2020, I, along with

23   others, did agree to submit the 539 application and the

24   client's affidavit.  I knew that some of the affidavits

25   contained false facts.  We submitted this affidavit in order

1   for the clients to receive an asylum status in the United

2   States.  These documents were filed under the oath, and I knew

3   that they contained material false information.

4           Some of this took place in the Southern District of

5   New York and it happened in New York and it was about 90

6   people.

7           THE COURT:  About -- I'm sorry.  The last part.

8           THE DEFENDANT:  Ninety people, 90 applications.

9           THE COURT:  Ninety applications.

10          THE DEFENDANT:  Yes.  9, 0.

11          THE COURT:  Thank you.

12          So you, along with others, you said?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Agreed to do this?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And at the time that you agreed to do

17  this, did you agree and join in with that plan voluntarily and

18  knowingly?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  And you knew that what you were agreeing

21  to do would violate the laws of the United States?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  And you knew at the time that you did what

24  you did that some of the documents involved contained false

25  statements, correct?

1                THE DEFENDANT:  The statement itself, yes.

2                THE COURT:  What documents are we talking about?

3                THE DEFENDANT:  Clients' affidavit.

4                THE COURT:  And the reason that you did what you did

5     was to unlawfully obtain asylum status for your clients, is

6     that correct?

7                THE DEFENDANT:  Yes, your Honor.

8                THE COURT:  What statements were under oath?

9                THE DEFENDANT:  The clients' affidavits.

10               THE COURT:  Who prepared those affidavits?

11               THE DEFENDANT:  Igor Reznik prepared some of the

12    affidavits the clients brought themself to the office.

13               THE COURT:  Did Mr. Reznik work with you and under

14    your supervision?

15               THE DEFENDANT:  He work as a freelance translator.  He

16    didn't work under my supervision.  He was working from his

17    house.  He was working from the Starbucks.  Sometimes he came

18    to the office.

19               THE COURT:  But you knew that the statements that he

20    helped to prepare contained materially false statements,

21    correct?

22               THE DEFENDANT:  Yes.

23               THE COURT:  And you have told me that some of the

24    activity that you just described to seek to obtain these false

25    asylum or to submit these false asylum applications took place

1    in the Southern District of New York, correct?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  When you did what you have just described

4    to me, did you know that what you were doing was wrong?

5                    THE DEFENDANT:  Yes, your Honor.

6                    THE COURT:  Did you know that it was illegal?

7                    THE DEFENDANT:  Yes, your Honor.

8                    THE COURT:  Let me pause here and ask, is there

9    anything further by way of factual matter that the government

10   wishes me to address with Ms. Dzhamgarova?

11                   MR. REBOLD:  Your Honor, a very small technical point.

12                   THE COURT:  Sure.

13                   MR. REBOLD:  Ms. Dzhamgarova allocuted that she was

14   submitting these forms to get her clients asylum status.  Under

15   paragraph 1 of 18 United States Code Section 1546(a), it's the

16   document that you are trying to obtain, as opposed to,

17   technically, asylum status, meaning the crime is attempting to

18   obtain a document that was prescribed by statute or regulation

19   for entry into or as evidence of authorized stay or employment

20   in the United States.

21                   So in this case I just want to make clear, the

22   document itself that provides one with asylum status is known

23   as a form I-94.

24                   THE COURT:  Ms. Dzhamgarova, did you hear what counsel

25   just explained to me?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Is that in fact correct, that what you

3    were trying to do was to obtain a form I-94?

4          THE DEFENDANT:  Yes.  This is the result after the

5    case is granted, the immigration officer or the immigration

6    judge issues the I-94.  That is asylum status.

7          THE COURT:  You were attempting, by submitting

8    materially false statements, to obtain I-94 forms for your

9    clients, correct?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Mr. Rebold.

12         MR. REBOLD:  Thank you.  That covers it, your Honor.

13         THE COURT:  Ms. Dzhamgarova, do you admit the

14   forfeiture allegations in the indictment?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Mr. Rebold, is there an adequate factual

17   basis to support a plea of guilty to Count One?

18         MR. REBOLD:  There is, your Honor.

19         I just want to make it clear, just because I don't

20   think the number has been put on the record, but the forfeiture

21   amount is $540,000.  Among the things that the defendant -- the

22   appellate waiver that the defendant has agreed to as part of

23   the agreement of plea agreement is not to appeal forfeiture in

24   the amount of $540,000, equal to or less than that amount.

25         THE COURT:  Do you have a copy, Mr. Aidala, of the

1   proposed consent order of forfeiture/money judgment?

2                   MR. AIDALA:  Yes, your Honor.

3                   THE COURT:  Can you just keep it there in case

4   Ms. Dzhamgarova would like to look at it.

5                   Ma'am, do you understand that you have agreed to entry

6   of a money judgment in the amount of $540,000?

7                   THE DEFENDANT:  Yes, your Honor.

8                   THE COURT:  In this draft preliminary order of

9   forfeiture/money judgment?

10                  THE DEFENDANT:  Yes, your Honor.

11                  THE COURT:  And is it your understanding that,

12  pursuant to your plea agreement, you have waived the right to

13  appeal the forfeiture aspect of the judgment that will be

14  entered in this case if the amount that's entered is $540,000

15  or less?

16                  THE DEFENDANT:  Yes, your Honor.

17                  THE COURT:  Mr. Rebold.

18                  MR. REBOLD:  Thank you, your Honor.

19                  THE COURT:  Mr. Rebold, I may have asked you this.  Is

20  there an adequate factual basis to support a plea of guilty to

21  Count One?

22                  MR. REBOLD:  Yes, your Honor, there is.

23                  THE COURT:  Mr. Aidala, is there an adequate factual

24  basis to support a plea of guilty by your client to Count One?

25                  MR. AIDALA:  Yes, your Honor.

1                THE COURT:  Thank you.

2                Ms. Dzhamgarova, now that we have discussed your plea

3      agreement and the possible penalties of the crime to which you

4      tell me you intend to plead, we can turn to entry of a plea.

5                Are you prepared to proceed?

6                THE DEFENDANT:  Yes, your Honor.

7                THE COURT:  Would you please stand.

8                THE DEFENDANT:  Yes.

9                THE COURT:  Thank you.

10               Ms. Dzhamgarova, how do you plead to Count One of the

11     indictment, charging you with conspiracy to commit immigration

12     fraud, in violation of Title 18, United States Code, Section

13     371?

14               THE DEFENDANT:  I plead guilty.

15               THE COURT:  Are you pleading guilty because you are in

16     fact guilty?

17               THE DEFENDANT:  Yes.

18               THE COURT:  Are you pleading guilty voluntarily?

19               THE DEFENDANT:  Yes.

20               THE COURT:  Are you doing so of your own free will?

21               THE DEFENDANT:  Yes.

22               THE COURT:  Are there any questions, Mr. Aidala, that

23     you believe I should ask Ms. Dzhamgarova in connection with

24     this plea?

25               MR. AIDALA:  No, your Honor.

1          THE COURT:  Mr. Rebold, are there any additional

2    questions you believe I should ask Ms. Dzhamgarova in

3    connection with her plea?

4          MR. REBOLD:  No, your Honor.

5          THE COURT:  Ms. Dzhamgarova, you have acknowledged

6    that you are in fact guilty, as charged in Count One of the

7    indictment.  Because I'm satisfied that you know your rights,

8    including your right to go to trial, and you are waiving your

9    rights voluntarily and that you are aware of the consequences

10   of your plea, including the sentence that may be imposed, I do

11   find that your plea is entered knowingly and voluntarily and is

12   supported by an independent basis in fact containing each of

13   the essential elements of the offense.  I therefore accept your

14   guilty plea, and I enter a judgment of guilty on Count One of

15   the indictment of conspiracy to commit immigration fraud in

16   violation of Title 18, United States Code, Section 371.

17         You may be seated, ma'am.

18         THE DEFENDANT:  Thank you.

19         THE COURT:  As I just did, I know you were sitting

20   here and you heard me discuss this, but I am going to talk to

21   you specifically about this as well, the process going forward.

22         The next step is that the probation office needs to

23   prepare a presentence report that will assist me in determining

24   what an appropriate sentence will be in your case.  In order to

25   do that, the probation office needs to interview you and it's

1  very important that you cooperate with the probation office,

2  that any information that you give to the probation office be

3  truthful and it be accurate.  That report is very important to

4  my decision about what an appropriate sentence will be.

5          Once the report is prepared in draft format, you and

6  your lawyer and also the government and its lawyers will have a

7  right to examine that report, to challenge it, to provide

8  comments to the probation office, to object to anything in the

9  report.  Before I sentence you, you'll have the opportunity to

10  address the Court, if you wish to do so.

11          Is there any reason, in the opinion of counsel, why a

12  presentence report should not be prepared at this time?

13          MR. AIDALA:  No, your Honor.

14          MR. REBOLD:  No, your Honor.

15          THE COURT:  Mr. Aidala, I assume you wish to be

16  present for any interview of Ms. Dzhamgarova in connection with

17  the preparation of the report?

18          MR. AIDALA:  Yes, your Honor.  I do have one question

19  about that interview.

20          THE COURT:  Sure.

21          MR. AIDALA:  Will the Court allow my client to rely on

22  the allocution given here today in court?

23          THE COURT:  That's your call in terms of the advice

24  you give her.  Yes.

25          MR. AIDALA:  Thank you, your Honor.

1              THE COURT:  I do order that no interview take place

2     unless Mr. Aidala is present with Ms. Dzhamgarova, but I would

3     ask you, Mr. Aidala, to please reach out to the probation

4     office and try to schedule that interview within the next two

5     weeks.

6              MR. AIDALA:  Yes, your Honor.

7              THE COURT:  Mr. Rebold, please, I remind you, provide

8     a statement of facts to the probation office within that same

9     14-day time frame.

10              MR. REBOLD:  Yes, your Honor.

11              THE COURT:  So that the preparation of the report can

12     proceed.

13              I remind counsel of the importance of giving timely

14     comments or objections to the probation office.  I will receive

15     a courtesy copy of the draft report.  Defense submissions are

16     due two weeks prior to sentencing.  Government's submissions

17     are due one week before the sentencing date; the Court does

18     have availability for sentencing on May 31.  Is there any issue

19     with that date?

20              MR. REBOLD:  No, your Honor.  May I just briefly

21     confer with Mr. Aidala in regards to sentencing?

22              THE COURT:  Sure.

23              MR. AIDALA:  Your Honor, we have no objection to May

24     the 31st.

25              THE COURT:  Is there anything that needs to go on the

1    record?

2              MR. AIDALA:  Obviously, your Honor, there is no

3    secret.  This is a husband and wife here.  Would they be done

4    simultaneously or do one and then the other?

5              THE COURT:  My intent is that we would do the

6    sentencing at 2 p.m.  They would not be simultaneous.  I am

7    obligated under law to look at each defendant before me as an

8    individual, so no.  I'm not comfortable doing them together.

9              MR. AIDALA:  I'm not suggesting that they should be

10   done together.

11             Can I have a moment to talk with my client?

12             THE COURT:  Of course.

13             MR. AIDALA:  No objection, your Honor, to May 31 at 2

14   p.m.

15             THE COURT:  Does that work for the government as well?

16             MR. REBOLD:  Yes, your Honor.

17             THE COURT:  Does the government have anything you want

18   to put on the record about the question about whether these

19   would be done at the same time or --

20             MR. REBOLD:  I know it's probably on the record that I

21   was conferring with Mr. Aidala.  I had indicated -- I have had

22   other proceedings before other judges, including Judge

23   Sullivan, where the Court has conducted sentencing proceedings

24   simultaneously, but, obviously, going through -- making sure

25   that each defendant is dealt with individually as it relates to

 1    rights and records being made.  I indicated to Mr. Aidala that

 2    to the extent the Court was comfortable with it, the government

 3    wouldn't have any opposition to the defendants being sentenced

 4    simultaneously.

 5          My understanding is that to the extent that the Court

 6    is inclined to sentence both of these codefendants, meaning

 7    Ms. Dzhamgarova and Mr. Arcadian, to terms of imprisonment,

 8    there may, for example, be requests that the sentences be

 9    staggered, which is something that the government would not

10    likely have any problem with.

11          We thought there may be some sense in having them

12    either at or around the same time.  That's what I was

13    discussing with Mr. Aidala.

14          THE COURT:  I have to tell you both, I am more

15    comfortable doing them on the same day, but not at exactly the

16    same time.  I prefer to deal with each person who is before me

17    as an individual.  I am really not comfortable with doing them

18    at the same hearing.  I prefer to keep them separate.

19          To the extent the parties wish to ask for staggered

20    sentencing and to the extent, more importantly, the defense and

21    the government can agree on that, I presume you will address

22    that in your sentencing submissions to me.

23          MR. REBOLD:  We will.  Of course, we defer to the

24    Court's level of comfort in terms of staggering the sentences.

25          MR. AIDALA:  I do have one more question about my

1    sentencing submission.

2         There have been times when defense counsel has

3    submitted some video -- a video component of our actual

4    sentencing memorandum.  Will the Court allow us to do that?

5         THE COURT:  I will allow you to do it.  I will tell

6    you, I've only had that in one case, and, frankly, I didn't

7    find it particularly helpful.  What it was was simply a series

8    of people attesting to the character of the defendant, which

9    was the same thing as if the people had just submitted letters

10   to me, only it raised a question in my mind about, am I hearing

11   the whole of what this person said or has it been selectively

12   edited?

13        I am not going to tell you not to, Mr. Aidala, but if

14   all it is is character references, I don't know that a video is

15   any more persuasive than letters.

16        MR. AIDALA:  I very much appreciate your input, Judge.

17        THE COURT:  Ms. Dzhamgarova, before we conclude, I

18   just want to remind you of the importance that you be truthful

19   with the probation office and with the Court.  Failure to do so

20   could have an adverse effect on your sentencing.  It could

21   subject you to further prosecution.  But, specifically, I do

22   reserve the right to deny you reduction in your offense level

23   calculation for acceptance of responsibility if you don't

24   cooperate fully.  Not that I'm expecting that, but I do need to

25   warn you.

1          Let me turn and address bail.  My understanding is

2     Ms. Dzhamgarova is also out on bail on certain conditions,

3     correct?

4          MR. REBOLD:  That's correct.

5          THE COURT:  Is it the government's application that

6     that circumstance remain, in other words, she will remain -- be

7     released subject to conditions?

8          MR. REBOLD:  Yes, your Honor.

9          THE COURT:  Any application, Mr. Aidala, with respect

10    to bail?

11         MR. AIDALA:  Can I have one moment, your Honor?

12         THE COURT:  Sure.

13         MR. AIDALA:  No, your Honor.

14         I am just going to give the court a heads-up.  I will

15    be sending a request to the Court to allow her to travel to

16    Florida.  Upon her arrest, she sold an apartment that she had

17    in Florida, and all of her stuff is in storage.  And abiding by

18    the Court's original bail rulings, she has not gone to Florida.

19    She is just incurring charges when it is sitting there, and she

20    would like the opportunity to move it from Florida to New York.

21         THE COURT:  I understand all of that.  Talk to the

22    government and to probation about that.  Submit a request.  If

23    it's on consent, tell me that.

24         MR. AIDALA:  Thank you, your Honor.

25         THE COURT:  I'll act on it promptly.

1            Ms. Dzhamgarova, you understand, though, that

2   otherwise you remain subject to all of the conditions that were

3   set at the time that you were released on bail.

4            I remind you again that you need to be in this

5   courtroom on May 31 at 2 p.m.  Failure to do so could subject

6   you to a fine or separate imprisonment for a bail jumping

7   offense.

8            You understand?

9            THE DEFENDANT:  Yes, your Honor.

10            THE COURT:  Now, just a word to counsel for the

11   government and the defense.  If there are any issues with

12   respect to any of the financial penalties, specifically I'm

13   talking about the forfeiture order that has been submitted to

14   me, I will sign the preliminary order of forfeiture.

15            It's on consent, as I understand it, right, Mr.

16   Aidala?

17            MR. AIDALA:  Yes, your Honor.

18            THE COURT:  Is there any objection to my entering it

19   at this time?

20            MR. AIDALA:  No, your Honor.

21            THE COURT:  Mr. Rebold, I assume --

22            MR. REBOLD:  No.  We would actually prefer the Court

23   enter it.

24            THE COURT:  I will enter that preliminary order of

25   forfeiture now.

1          As you both know, the forfeiture becomes part of the

2   judgment in the case.  So if there are any issues with respect

3   to that preliminary order of forfeiture or the forfeiture

4   amount, please talk to each other about it.  Call it to the

5   Court's attention well in advance of sentencing so that if

6   there needs to be any kind of a hearing with regard to the

7   proper amount of forfeiture, we can take care of that prior to

8   sentencing.

9          I would ask the parties, please order a copy of the

10  transcript of today's plea hearing.  Make sure it's part of the

11  docket at least two weeks before sentencing.

12          I thank our court reporter very much.

13          Is there anything else, Mr. Rebold?

14          MR. REBOLD:  No, your Honor.

15          THE COURT:  Mr. Aidala.

16          MR. AIDALA:  No, your Honor.  Thank you very much.

17          THE COURT:  Thank you.  We will stand adjourned then.

18  I wish everyone a good rest of the day.  Thank you.

19          (Adjourned)

20

21

22

23

24

25